## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**MARGARET THOMAS, M.D.,**

    **Plaintiff,**

**against**                                **Case No.:18-cv-00238-NF/KHR**

**MEMORIAL MEDICAL CENTER;** *et al*,

    **Defendants.**

## PLAINTIFF MARGARET THOMAS' RESPONSE IN OPPOSITION TO DEFENDANT LIFEPOINT HEALTH, INC.'S AND LIFEPOINT RC, INC.'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2) AND 12(b)(5)

      **COMES NOW** Plaintiff Margaret Thomas, by and through her counsel, Merit Bennett of The Bennett Law Group, LLC, and hereby submits her Response in Opposition to Defendants LifePoint Health, Inc.'s ("LifePoint Health") and LifePoint RC, Inc.'s ("LifePoint RC") (collectively "LifePoint Defendants") motion pursuant to Federal Rule of Civil Procedure 12(b)(2),  to dismiss the claims of Plaintiff Margaret Thomas, M.D. ("Plaintiff" or "Dr. Thomas") asserted against these entities for lack of personal jurisdiction.  (New Mexico's long-arm statute permits this Court to exercise personal jurisdiction over the LifePoint Defendants, and  this Court's exercise of personal jurisdiction over them does not violate Federal Due Process.)  Additionally, LifePoint moves for dismissal for insufficient service of process, pursuant to Federal Rule of Civil Procedure 12(b)(5), which would be denied.  Accordingly, this Court should deny LifePoint Defendants' motion to dismiss.

# I.  ESSENTIAL FACTS

This is an employment discrimination and retaliation action that arises out of Dr. Margaret Thomas's wrongful termination from the Southern New Mexico Family Medicine Residency Program (the "Residency Program") operated by the Memorial Medical Center in Las Cruces, New Mexico.  In her First Amended Complaint, Dr. Thomas asserts numerous causes of action, including: gender, race/national origin discrimination and retaliation under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, and New Mexico Human Rights Act (Counts I and III); age discrimination under the Age Discrimination in Employment Act of 1976 (Count II); intentional interference with an employment contract (Count IV); intentional infliction of emotional distress (Count V); negligent training, management, supervision, and investigation (Count VI); bad faith breach of an employment contract (Count VII); bad faith breach of the implied covenant of good faith and fair dealing (Count VIII); *respondeat superior* and agency theories of vicarious liability (Count IX); assault (Count X); defamation and libel (Count XI); negligence, negligence per se, and gross negligence per se (Count XII); *prima facie* tort (Count XIII); civil conspiracy (Count XIV); and for injunctive relief (Count XV).  See generally January 16, 2018, First Amended Complaint.

Defendant LifePoint Health is the parent company of its wholly-owned subsidiary, **soon-to-be-named Defendant** PHC-Las Cruces, Inc. ("PHC"), d/b/a Memorial Medical Center ("MMC"), and, at all relevant times herein, exercised total control over, owned and/or operated MMC and "implicated and interjected themselves into the illegal decision-making process of" MMC.  *Id.* at  3, 12-15. (Plaintiff filed an amended Charge of Discrimination with the EEOC and the New Mexico Human Rights Division to include PHC-Las Cruces, Inc., as a named defendant and will soon be moving this Court to amend her Complaint to add PHC as a

defendant in this action.)  *See* **Exhibit A**: relevant portions of United States Securities and Exchange Commission Form 10-K filed by LifePoint Health for fiscal year ending December 31, 2016.  LifePoint Health is the sole shareholder of PHC, dba MMC (**Exhibit A**, at page "Exhibit 21.1," p. 2), and is engaged in the management and oversight and decision-making of its wholly-owned subsidiary.  *See* argument and citations below.  To what degree control is exercised is not yet fully known, as discovery has yet to be undertaken in this case.  *See also* **Exhibit A-1**, which is Bloomberg's overview of PHC, "doing business as Memorial Medical Center in Las Cruces."

 (Plaintiff also hereby requests that this Motion to Dismiss/For Summary Judgment be denied or, at least, not be given any further consideration until discovery on these issues has been undertaken.)

For example, in Dr. Thomas' contract with MMC under Section 5.10, at page 4, "Notices," (*see* **Exhibit B**) the two Defendants, MMC and LifePoint Health (fka LifePoint Hospitals, Inc.), are both to receive any and all notices required pursuant to Dr. Thomas' contract, as it states that a copy of all notices should also go to "LifePoint Hospitals, Inc." without any mention that Lifepoint is a third party to this contract or why a copy of all notices between Dr. Thomas and her employer should go to a third-party corporation, especially if LifePoint does not exercise any control over MMC. (LifePoint Hospitals, Inc., changed its name to LifePoint Health, Inc., in May of 2015.  *See* **Exhibit C**, Article from StreetInsider.com, quoting LifePoint CEO William Carpenter. "… we have focused on providing quality care close to home… We began by ***operating community hospitals*** and, today, ***our operations*** have expanded to include physician practices …." "***LifePoint Health operates facilities*** in more than 60 communities in 20 states, including several regional health systems." Emphasis added.)

Administrative dependence of one entity upon another can be exhibited by the dominant entity providing internal functions to the related entity, such as billing, payroll, accounting and legal support.  LifePoint states in its motion that Defendant LifePoint RC pays the payroll taxes of MMC (Doc. 4-1, p. 4).  While LifePoint avows, on the one hand, that it "otherwise did not engage … in any conduct in New Mexico," it nevertheless equivocates, "They [LifePoint Defendants] have not solicited business nor engaged in any other *persistent* course of conduct in New Mexico." *Id.* Plaintiff is therefore entitled to explore what "*persistent*" means and to discover what "*nonpersistent*" conduct is actually engaged in by LifePoint in New Mexico.

Again, until more discovery is conducted, the total nature and extent of LifePoint's exertion of control over MMC through its wholly-owned New Mexico subsidiary PHC is unknown.  For example, Plaintiff should be permitted to discover: if LifePoint has commingled assets or centralized its cash function for its subsidiary; if LifePoint files its subsidiary's tax information as part of an affiliated group; if PHC files a consolidated return with its parent company; whether accounting services are provided by LifePoint to PHC without appropriate compensation; how much control does the LifePoint Board of Directors exercise over decisions of its subsidiaries, including PHC/MMC? All of these questions need to be answered before the dismissal of LifePoint from this case is ripe for review.

In addition, these Defendants are relying on the affidavit of a naturally biased LifePoint Health employee, the alleged facts of which have not been subjected to any cross-examination.

As a basis for jurisdiction over the LifePoint Defendants, Dr. Thomas alleges that LifePoint RC is a foreign corporation registered with the New Mexico Secretary of State, that LifePoint Health owns and operates MMC through PHC and that the LifePoint Defendants:

are subject to the jurisdiction and venue of this Court by their appearance in Santa Fe, New Mexico, to do business in this state by assisting one or more of the Defendants in the commission of one or more of the acts and/or omissions which are the subject of this Complaint in Santa Fe County, New Mexico, pursuant to New Mexico law (torts actually committed in this state) and the New Mexico Long-Arm Statute, NMSA 1978, Section 38-1-16. Court Doc. 1-2, at  2.

If, as LifePoint Defendants state, "the LifePoint Defendants do not operate manage, control, exercise control over, supervise or monitor the Residency Program, and they played no role in Dr. Thomas's participation in or termination from the Residency Program," then why is LifePoint Health, Inc., (fka LifePoint Hospitals, Inc.) designated as a party to receive notice in Dr. Thomas' contract?  Again, *see* **Exhibit B**.

## II.  ARGUMENT

### A.    Legal Standard for Review.

Personal Jurisdiction over the LifePoint Defendants is proper under the New Mexico long-arm statute**.  In "the preliminary stages of the litigation, however, that burden is light."** *Behagen v. Amateur Basketball Ass'n of the United States*, 744 F.2d 731, 733 (10th Cir. 1984) (Emphasis added). "When the court rules on a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction . . . **plaintiff need only make a *prima facie* showing of personal jurisdiction to defeat the motion**.   A plaintiff may make the *prima facie* showing by demonstrating by affidavit or other written materials, facts that, if true, would support the exercise of personal jurisdiction over the defendant."  *Rainy Day Books, Inc. v. Rainy Day Books & Café LLC*, 186 F.Supp.2d 1158, 1160 (Kan. 2002), citing *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090 (10th Cir. 1998) (Emphasis added).  "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits.  **If the parties present conflicting affidavits or evidence, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's *prima facie* showing is sufficient**

5

**notwithstanding the contrary presentation by the moving party.** *Behagen*, at 733. Internal citations omitted.  (Emphasis added.)  Plaintiff can make such a *prima facie* showing of the Court's personal jurisdiction over the LifePoint Defendants; therefore, the Court must deny Defendants' motion to dismiss.

When the court resolves a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, plaintiff need only make a *prima facie* showing of the jurisdictional facts.  All uncontroverted allegations in the complaint are taken as true, and fact conflicts are resolved in the plaintiff's favor.  *See also Lewis v. Fresne*, 252 F.3d 352, 356 (5th Cir. 2001).

For purposes of deciding a motion to dismiss, the Court accepts the allegations of the complaint as true and views the facts in the light most favorable to it.  *See, e.g., Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003); *Murphy v. Federal Deposit Ins. Corp.*, 208 F.3d 959, 962 (11th Cir. 2000).

LifePoint has the necessary "minimum contacts" with New Mexico to support the Court's exercise of personal jurisdiction.  "The first step in the minimum contacts analysis requires a determination of whether Plaintiff [can make] a showing of some act by which the defendant purposefully availed itself of the privilege of conducting business in the jurisdiction of this court, thus invoking the benefits and protections of its laws.  A defendant need not be physically present or have physical contacts with the forum, as long as its efforts are 'purposefully directed' toward forum residents."  *Rainy Day*, at 1163, citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Purposeful availment may occur by actions or even a single act for which the defendant should reasonably anticipate being hailed into court into the forum jurisdiction. *Id*.

As pointed out in *Rainy Day Books*, "the pertinent inquiry in the personal jurisdiction analysis is whether [defendant], by [his] own actions, has purposefully availed [himself] of the privilege of conducting business in this jurisdiction so that [he] should reason[ably] anticipate being hailed into this forum. ***The state of New Mexico has a substantial interest in providing a means of recovery for its citizens who sustain damages due to reliance on out-of-forum defendants.*** Plaintiff has an interest in obtaining convenient and effective relief, as the judicial system has an interest in efficiently resolving this controversy." *Id*. Emphasis added.

Further, LifePoint RC, although perhaps a minor player because it does not, like Defendant LifePoint Health, own and operate PHC (the wholly owned subsidiary of LifePoint Health), is nevertheless registered and licensed to do business, and has thereby subjected itself to jurisdiction, in New Mexico. No foreign corporation is required to register as a foreign corporation in New Mexico unless they are conducting business inside New Mexico, according to the New Mexico Secretary of State's website and 2006 New Mexico Statutes - Section 53-17-1 - Admission of foreign corporation. LifePoint RC has registered as a foreign corporation in New Mexico. *See* New Mexico Secretary Of State, Corporations Division Search information for LifePoint RC, Inc., attached as **Exhibit D**. A foreign corporation which has received a certificate of authority under the Business Corporation Act, as has LifePoint RC, shall "enjoy the same, but no greater, rights and privileges as a domestic corporation organized for the purposes set forth in the application pursuant to which the certificate of authority is issued." NMSA 1978, Section 53-17-8. The effect is that the corporation "shall be authorized to transact business in this state for those purposes set forth in its application…." NMSA 1978, Section 53-18-2.

A foreign parent corporation will not be required to register in a state merely because its subsidiary is doing business in the state. *Central Life Securities Co. v. Smith*, 236 F. 170 (7th

Cir. [Ill.] 1916); *State ex rel. City of St. Louis v. Public Service Commission*, 331 Mo. 1098, 56

S.W.2d 398 (1932); *Commonwealth of Pennsylvania v. American Gas Co.*, 352 Pa. 113, 42 A.2d

161 (1945); *Colonial Trust Co. v. Montello Brick Works*, 172 F. 310 (3rd Cir. [Pa.] 1909).

LifePoint RC nevertheless subjected itself to jurisdiction in this state when it registered and was

accepted as a foreign corporation.

There is no doubt that LifePoint Health owns 100% of PHC, the New Mexico

corporation which "own and operates" MMC, as LifePoint Health's Security and Exchange

Commission ("SEC") 10-K so states. *See* **Exhibit A**, at page "Exhibit 21.1," p. 2. Upon review

of LifePoint Health's corporate information, it is of considerable importance to note that all of

the Directors and officers of PHC, dba MMC, are also employees of or affiliated with LifePoint

Health, which further establishes LifePoint Health's actual control over the operation of MMC in

New Mexico.

LifePoint Health also declares in its SEC 10-K that it, "acting through its subsidiaries,

owns and operates community hospitals" such as MMC. **Exhibit A**, page 1.

In fact, LifePoint Health, specifically reports to the U.S. Securities and Exchange Commission

that:

1. "… we (LifePoint Health) believe that … by maintaining ethical and professional standards, our facilities [such as MMC] will be better positioned to attract and retain qualified physicians …. *Id.*, at p. 19;

2. "We compete with other healthcare providers in recruiting and retaining qualified management and staff personnel responsible for the day-to-day operations of each of our facilities [such as MMC]. *Id.*;

3. "It is our policy to conduct our business with integrity and compliance with the law…. The regulatory compliance program is intended to help ensure that high standards of conduct are maintained in the operation of our business and that policies and procedures are implemented so that employees act in full compliance with all applicable laws, regulations and company policies…. In addition, we regularly monitor our ongoing compliance efforts and develop and implement

policies and procedures designed to foster compliance with the law.  The program also includes a mechanism for employees to report, without fear of retaliation, any suspected legal or ethical violations ...." Id., at p. 25;

4.  "Given the nature of our operating environment, we are subject to potential professional liability claims ... and other claims." *Id.*, at p. 26;

5.  "The success of our facilities depends in part on the ... quality of the physicians on the medical staffs of our hospitals."  *Id.*, at p. 33;

6.  Memorial Medical Center is one of LifePoint's "hospital campuses." *Id.*, at p. 39;

7.  LifePoint Health settles lawsuits filed against its subsidiaries and LifePoint Health jointly.  *Id.*, at p. 42 and at pp. F-42 and F-43;

8.  "LifePoint Health, Inc., acting through its subsidiaries [such as PHC], owns and operates community hospitals [such as MMC] ... throughout the United States." Id., at p. F-10;

In addition, there is cross-pollination of executives between LifePoint Health and PHC/MMC and LifePoint RC (*see* listing of PHC/MMC officers and directors on the New Mexico Corporations Division website, attached hereto as **Exhibit E**, and *see* also LifePoint RC's listing attached as **Exhibit D**):

-   PHC/MMC Director Robert Neal Klein was previously the chief operating officer for LifePoint Health and now serves as Wester Group President of LifePoint Health. In his LinkdIn Profile, Klein only notes his employment with LifePoint Health and curiously does not mention that he is the President of PHC/MMC, but in a LifePoint Health Article, it does indicate that "[Klein] is now responsible for LifePoint's hospitals in ... New Mexico."  *See* New Mexico Corporations Division listings for PHC attached as **Exhibit E** and for LifePoint RC attached as **Exhibit D**.  *See also* LinkedIn Profiles attached as Exhibit F and LifePoint Health Article attached as **Exhibit G**.

-   Director Bradley Owens is listed on his LinkedIn profile as the COO of the Western Group of LifePoint Health.  Nowhere does he admit that he is a director of PHC/MMC.  *See* **Exhibits E** and **F**.

-   J. Michael Grooms is listed on his LinkedIn profile as the Treasurer of PHC/MMC. On his LinkedIn profile, however, he posts that he is the Vice President of Financial Reporting at LifePoint Hospitals/Health. Nowhere in his profile does he admit that he is also an officer of PHC/MMC.  *Id*. **Nor that he is the Vice President and Treasurer of LifePoint RC.**  *Id*.

9

- Secretary of PHC/MMC, Christy Greene, lists herself as former Vice President and Associate General Counsel and Corporate Secretary of LifePoint Health until 2017. Nowhere in her profile does she admit that she is also an officer of PHC/MMC. *Id.*

- Kathy Teague (***whose Affidavits are attached to Defendant's Motion***, Doc. 4-2, pp.) has sworn that she is the Assistant Corporate Secretary and Senior Director of Corporate Governance for  LifePoint Health (Court Docs. 4-2 and 4-3), **yet she failed to inform the Court that she is also the Assistant Secretary for PHC/MMC.  Nowhere in her LinkedIn profile does she admit that she is an officer of PHC/MMC**. *Id*. **Nor that she is the Secretary of LifePoint RC**. *Id*.

- Lastly, Officer and Vice President of PHC/MMC, Christopher Monte lists himself on his LinkedIn profile as Vice President of Tax at LifePoint Hospitals, yet nowhere in his LinkedIn profile does he admit that he is also Vice President of PHC/MMC. *Id*. **Nor that he is the Vice President of LifePoint RC**. *Id*.

On the New Mexico Corporations Division website, the addresses listed for all of the above individuals are identical to the corporate address of LifePoint Health in Brentwood, Tennessee, and the "Principal Place of Business in New Mexico" for both companies is listed as "NONE, NONE, NONE, NONE."  *See* **Exhibits D** and **E**.

The foregoing clearly establishes that LifePoint Health, Inc., by and through these humans wearing two hats (one publicly and one more secretively), exercises total control over the operation of PHC/MMC, and that PHC is essentially a *de facto* shell subsidiary of LifePoint.

Further, on LifePoint's official website, LifePoint lists MMC under "Our Communities." *See* copy of portion of MMC website attached as **Exhibit G**.  On this same page, it is stated that LifePoint Health "has affiliated healthcare facilities and providers in communities across the U.S." *Id*.

And, on MMC's website, MMC advertises itself as a "LifePoint Hospital."  See Memorial Medical Center website pages attached as **Exhibit H**.

Even the main alleged perpetrator in this case, the program director of the Defendant Residency Program at MMC, Defendant John Andazola, is a member of LifePoint Health's

10

National Physician Advisory Board.  *See* LifePoint Health's leadership listing attached as **Exhibit I**.

In LifePoint Health's Annual SEC Report (Form 10-K), LifePoint states that, "We seek to ***operate our facilities*** in a manner that positions them to compete effectively and ***to further our mission*** of Making Communities Healthier."  **Exhibit A**, at p. 3. (Emphasis supplied.) It goes on to state that, among other matters, "generally, our overall operating strategy is to…recruit, attract and retain physicians interested in practicing in the communities where ***our hospitals*** are primarily located."  *Id*.  (Emphasis supplied.)  Not only does LifePoint Health refer to the subsidiary hospitals like MMC as "our hospitals," but LifePoint Health's strategy is also to involve itself in hiring for "our hospitals," including recruiting and retention. *Id.*  LifePoint also states, "All of ***our hospitals*** are currently licensed under appropriate state laws and are qualified to participate in the Medicare and Medicaid programs. *Id.*, at p. 19.  Emphasis supplied.

Under the topic "Regulatory Compliance Program," LifePoint Health states, "it is our policy to conduct our business with integrity and in compliance with the law." *Id.*, at p. 25. "In addition, we regularly monitor our ongoing compliance efforts and develop and implement policies and procedures designed to foster compliance with the law. The program also includes a mechanism for employees to report without fear of retaliation any suspected legal or ethical violations to their supervisors, designated compliance officers in our facilities, ***our compliance hotline or directly to our corporate compliance office***." *Id*.  Emphasis supplied.

"In addition to ***our physicians***, the operations of ***our facilities*** are dependent on the efforts and experience f our management and medical support personnel, such as nurses, pharmacist and lab technicians." *Id.*, at 35. (Emphasis supplied.)  LifePoint lists MMC as one of "***our hospital campuses***."  *Id*. at 29.  Emphasis supplied.

11

Under "Organization," LifePoint states, "LifePoint Health, Inc., a Delaware Corporation, ***acting through its subsidiaries***, ***owns and operates*** community hospitals, regional health systems, physician practices, outpatient centers, and post-acute facilities in 22 states throughout the United States." *Id*., at F-10.  (Emphasis supplied.)  **Therefore, LifePoint Health is doing business in the State of New Mexico.**   LifePoint refers to itself and its subsidiaries, of which PHC/MMC is one, as a single entity. The facts therefore allow the reasonable inference that LifePoint controls MMC and therefore does business in New Mexico sufficient to trigger long-arm jurisdiction.

Thus, Defendant's Motion should be denied under Rule 12(b)(2), and as a Motion requesting Summary Judgment, it is premature to resolve Defendant's argument.  Plaintiff is entitled to an opportunity to conduct discovery on the issues which require a resolution of obviously-disputed facts*. See, e.g., Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002) ("'When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion.' . . . [A] refusal to grant discovery constitutes an abuse of discretion if the denial results in prejudice to a litigant . . .") (citation omitted).

Our long-arm statute provides that the actions of an agent are imputed to the principal for the purposes of personal jurisdiction. *See* § 38-1-16(A) ("Any person . . . who in person <u>or through an agent</u> does any of the acts enumerated . . . submits himself . . . to the jurisdiction of the courts of this state.").  Emphasis supplied.  "An agent is one authorized by another to act on his behalf and under his control." *Hansler v. Bass*, 106 N.M. 382, 387, 743 P.2d 1031, 1036 ; *see also Carlsberg Mgmt. Co. v. State, Taxation & Revenue Dep't*, 116 N.M. 247, 251, 861 P.2d 288, 292 (Ct. App. 1993) ("The retention of control by [the principal] and the delegation of

specified duties indicates an agency relationship."); Restatement (Second) of Agency § 1, at 7 (1958) ("Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the {*783} other so to act."). The existence of agency is a question of fact. *Carlsberg Mgmt. Co.*, 116 N.M. 247 at 251, 861 P.2d at 292.

In order for a state court to exercise specific jurisdiction, 'the suit' must 'aris[e] out of or relat[e] to the defendant's contacts with the forum.'" *Bristol- Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (June 19, 2017) (*quoting Daimler*, 134 S. Ct. at 749). "[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (*quoting Goodyear*, 564 U.S. at 919). "In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum state.'" *Id.* at 1781 (*quoting Goodyear*, 564 U.S. at 919). Plaintiff requires some discovery before being able to demonstrate additional evidence other than what has been offered in this Motion. It is unknown whether the LifePoint Defendants have not and did not engage in any persistent course of conduct in New Mexico, but their data trail clearly indicates their intent to do so.

Moreover, New Mexico has an interest in providing a forum when appropriate. As the Supreme Court stated in *Burger King Corp.*, 471 U.S. at 473-74 (citations omitted):

> A state generally has a "manifest interest" in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors. . . . Where individuals "purposefully derive benefit" from their interstate activities, it may well be unfair to allow them to escape having to account . . . for consequences that arise proximately from such activities; the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed. *Id.*

The Court must only accept as true the well-pled facts of a plaintiff's complaint, as opposed to mere conclusory allegations. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc*., 514 F.3d 1063, 1070 (10th Cir. 2008).

**B.     Control.**

The relevant inquiry is whether the out-of-state parent company controls, manages, directs the functioning of, or conducts the affairs of, the corporation. *See, e.g., Mayers v. Taylor*, 2009 WL 2423746, at *2 (N.D. Cal. Aug. 5, 2009).  PHC/MMC is clearly performing acts for the parent and, in doing so, is under the parent's control.  *Mueller v. Seaboard Commercial Corp.*, 5 N.J. 28, 73 A. 2d 905 (1950).  Whether or not a parent uses its subsidiary as an instrumentality has been held to be a jury question, not an issue to be decided on a Motion to Dismiss or a Motion for Summary Judgment.  *Johannsen v. Mid Continent Petroleum Corp*., 232 Iowa 805, 5 N. W. 2d 20 (1942).

The "instrumentality rule" should be applied here, as there is sufficient basis for denying Defendant's motion to dismiss because there is evidence that LifePoint may: (1) exercise control over PHC/MMC; (2) that control is used by the parent to avoid liability; and (3) the control and consequent breach of duty may have proximately caused the injury to Plaintiff.   *Fisser v. International Bank*, 282 F.2d 231, 238 (2d. Cir. 1960).

In the case of Garden *City v. Burden*, 186 F. 2d 651 (10th Cir. 1951), the Court, in sustaining the jury finding that an irrigation company was the alter ego of its parent, said, "Where the relationship between the parent and subsidiary corporation is so intimate, parent's control over subsidiary is so dominating, and business and assets of the two are so commingled that recognition of a distinct entity would result in injustice to third persons, courts should look through the legal fiction of separate entity and treat them as justice requires.

14

A unity of interest or lack of separateness among entities or alter ego exists when a preponderance of factors point to the fact that PHC/MMC and LifePoint operate as one entity and lack separateness. (Remember, MMC's website touts MMC as a "LifePoint Hospital.") The relationship must be investigated for independence from an operational, financial and managerial appoint of view with respect to influence or dominance, economic dependency, administrative dependency and disregard of the corporate formalities**.  It is not necessary for all factors to be present.**  (If the Court is even remotely favorably considering Defendant's Motion, which Plaintiff argues is not supported by the available evidence to date nor by the presumption which favors its denial at this stage of the proceedings, Plaintiff respectfully requests that she be allowed to undertake discovery before a ruling is made.)

Since the parties have not yet engaged in discovery, this case is not ripe for a motion for summary judgment, which is essentially what has been presented to the Court.  Dominance of one entity is demonstrated by the entity's ability to exercise significant influence over management and operational decisions of its wholly-owned subsidiary. This influence is clearly present in this case.  The ability to exercise significant influence is confirmed by the governance of LifePoint and MMC/PHC by the same individuals. All of MMC/PHC's Board of Directors list themselves on LinkdIn as LifePoint employees.

**Plaintiff Properly Served the LifePoint Entities.**

LifePoint RC states it does not have a registered agent for service of process in New Mexico.  LifePoint RC Affidavit,  4. This is confounding, as the New Mexico Corporation Commission states that LifePoint RC's Registered Agent in New Mexico is CT Corporation System at 206 S. Coronado Ave, Espanola, NM 87532-2792.  Plaintiff so attempted and did, in fact, effectuate service on this Agent.  *See* Doc. 26.

LifePoint Health, Inc., is a Delaware corporation, and a Summons and Complaint were properly served on its registered agent.  *See* **Exhibit K**.

### III.   CONCLUSION

**WHEREFORE**, for the reasons stated above, Plaintiff requests that this Court deny Defendants LifePoint Health, Inc.'s and LifePoint RC, Inc.'s motion.

Respectfully submitted,

THE BENNETT LAW GROUP, LLC

By: _____
Merit Bennett, Esq.
460 St. Michael's Drive, Ste. 703
Santa Fe, New Mexico 87505
Ph: 505-983-9834 | Fax: 505-983-9836
E-mail: mb@thebennettlawgroup.com
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**
I hereby certify that on this 17th day of April, 2018, we filed the foregoing pleading electronically through the CM/ECF system, which notified the following counsel of record as more fully reflected in the Notice of Electronic Filing:

MONTGOMERY & ANDREWS, P.A.
100 Sun Ave NE, Suite 410
Albuquerque, New Mexico 87109
Ph: 505-884-4200 | Fax: 505 888-8929
Attorney: David H. Johnson
Email: djohnson@montand.com
Attorney: Deborah E. Mann
Email: dmann@montand.com

and

WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Ph: 615-244-6380 | Fax: 615-244-6804
Attorney: Mark W. Peters (pro hac vice)
Email: mark.peters@wallerlaw.com
Attorney: K. Coe Heard (pro hac vice)
Email: coe.heard@wallerlaw.com
*Attorneys for PHC-Las Cruces, Inc. d/b/a*
*Memorial Medical Center and the Individual Defendants*

THOMPSON MILLER & SIMPSON, PLC
734 West Main Street, Suite 400
Louisville, Kentucky 40202
Attorney: Todd Thompson
Email: Tthompson@Tmslawplc.com
Attorney: Ian Davis
Email: Idavis@tmslawplc.com

   and

MICHAEL W. BRENNAN, P.A.
141 E. Palace Avenue
P. O. Box 1234
Santa Fe, New Mexico 87501
Attorney: Michael W. Brennan
Email: mwbrennanlaw@gmail.com
*Attorneys for the LifePoint Defendants*

Margaret McLean, Esq.
Villagra Building
408 Galisteo Street
Santa Fe, New Mexico 87501
*Attorney for the New Mexico Medical Board*

THE BENNETT LAW GROUP LLC

By:   /s/ Merit Bennett
      Attorney for Plaintiff

17