## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

MARGARET THOMAS, M.D.,

      Plaintiff,

v.                                    Case No.:18-cv-00238-NF/KHR

MEMORIAL MEDICAL CENTER (Las Cruces); et al.,

      Defendants.

### PLAINTIFF'S RESPONSE IN OPPOSITION TO THE HOSPITAL'S
### MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT [DOC 17]

COMES NOW Plaintiff, Dr. Margaret Thomas, M.D., and for her response in opposition to the Defendant Hospital's (Memorial Medical Center's) Motion to Dismiss [Doc 17], states as follows:

### I.     STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rule of Civil Procedure should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Greenhouse v. MCG Capital Corp*., 392 F.3d 650, 655 (4th Cir. 2004). Defendant's Motion to Dismiss should be denied because Defendant cannot prove that Plaintiff has failed to state a claim upon which relief may be granted.  Courts must "review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation." *Id*. (*quoting Zoltek Corp. v. Structural Polymer Grp*., 592 F.3d 893, 896 n.4 (8th Cir. 2010)).  The Eighth Circuit Court of Appeals has refused, at the pleading stage, "to incorporate some general and formal level of evidentiary proof into the 'plausibility' requirement of *Iqbal* and *Twombly*." *Id*.

For purposes of deciding a motion to dismiss, the Court accepts the allegations of the complaint as true and views the facts in the light most favorable to it.  *See, e.g., Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003); *Murphy v. Federal Deposit Ins. Corp*., 208 F.3d 959, 962 (11th Cir. 2000).

"Defendant" or "Defendants" hereinafter refers to Defendant Memorial Medical Center and all of its agents and/or representatives, including Defendants Andazola and Gomez.

## II.     ARGUMENT

**The Allegations Are Not "Time-barred," But Even If They Were, They Are Still Admissible to Prove Intent to Discriminate**

Plaintiff would also agree that "time-barred" allegations cannot be the sole basis for the relief sought, but would point out that earlier acts of discrimination are still admissible as relevant evidence of Defendant's intent to illegally discriminate against Plaintiff when Defendant commits later acts of alleged discrimination which are still within the reach of the statute, especially, as in this case, when the illegal misconduct is still being perpetrated to this day by the refusal of this Defendant and all other Defendants to correct Plaintiff's Residency record of achievement of credits which were negatively impacted by the subject discrimination and to properly report to the New Mexico Medical Board that Plaintiff is therefore actually eligible for issuance of her New Mexico medical license and to otherwise facilitate the issuance of her medical license.

*See Sprint/United Management Co. v. Mendelsohn*, U.S. Sup. Ct. No. 06-1221 (February 26, 2008), where the U.S. Supreme Court acknowledged that the "question [of] whether evidence of discrimination by other supervisors is relevant in an individual ADEA case is fact based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Mendelsohn* involved discrimination allegedly perpetrated against other

employees, yet here Plaintiff's "time-barred allegations" involve other acts of discrimination directed by Defendants Andazola and Gomez toward Plaintiff, and are therefore "relevant" and "closely related [to] the evidence [of] [P]laintiff's circumstances and theory of the [instant] case." *See also Abrams v. Lightolier, Inc.,* 50 F.3d 1204 (3d Cir. 1995), where evidence of other "unrelated" acts of discrimination perpetrated by the employer were admissible to establish an intent to discriminate, allowed by the court pursuant to Fed. R. Evid. 404(b)(2).  *See Marshall, The Character of Discrimination Law: The Incompatibility of Rule 404 and Employment Discrimination Suits*; Yale Law Journal, Vol. 114, 1063 (2005).

Under the "continuing violation doctrine," Plaintiff can introduce testimony regarding **all** acts of discrimination, even though some of them may have occurred prior to the statute deadline. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) ("Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.").  A Title VII plaintiff does not prove harassment or the existence of a hostile working environment by alleging some "magic" threshold number of incidents. Conversely, an employer may not rebut a claim simply by saying that the number of incidents alleged is too few.  *Daniels v. Essex Group, Inc*., 937 F.2d 1264, 1273-74 (7th Cir. 1991); *see also Richardson v. N.Y. State Dep't of Correctional Serv*., 180 F.3d 426, 439 (2d Cir. 2000) ("There is neither a threshold 'magic number' of harassing incidents that gives rise, without more, to liability as a matter of law, nor a number of incidents below which a plaintiff fails as a matter of law to state a claim."). The Supreme Court emphasized that hostile work environment claims must be evaluated in the totality of the circumstances: . . . whether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances.

These may include the frequency of the discriminatory conduct; its severity; whether it is *physically threatening or humiliating, or a mere offensive utterance*; and whether it unreasonably interferes with an employee's work performance. *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 23 (1993). The Supreme Court further recognized that "no single factor is required." *Id.* Hence, a "hostile environment claim must be evaluated on the basis of the cumulative effect of the abusive conduct." *Dawson v. Westchester*, 373 F.3d 265, 274 (2d Cir. 2004); *see also Howley v. Stratford*, 217 F.3d 141, 151 (2d Cir. 2000) (Court "should not consider the record solely in piecemeal fashion . . . for a jury . . . would be entitled to view the evidence as a whole"); *Jackson v. Quanex Corp*., 191 F.3d 647, 661 (6th Cir. 1999) ("Thus, a court should not examine each alleged incident of harassment in a vacuum."); *Andrews v. Philadelphia*, 895 F.2d 1469, 1484 (3d Cir. 1990) ("A play cannot be understood on the basis of some of its scenes but only on its entire performance, and similarly, a discrimination analysis must concentrate not on individual incidents, but on the overall scenario.").

Where plaintiff pleads sexual and racial hostile environment claims dating from the early 1980s until she filed her EEOC Charge in August 1997, the Tenth Circuit found that the continuing violation theory applies. *See Boyler v. Cordant Technologies, Inc*., 316 F.3d 1137 (10th Cir. 2003). Similarly, where plaintiff complains of harassment both inside and outside the applicable limitations period, all such conduct is actionable under *National R.R. Passenger Corp. v. Morgan, supra. See also McFarland v. Henderson*, 307 F.3d 402 (6th Cir. 2002); *Marrero v. Goya of Puerto Rico, Inc*., 304 F.3d 7 (1st Cir. 2002).

In *Morgan*, the Supreme Court also stated that a discriminatory act outside of the time limitation may constitute relevant background evidence in a proceeding in which the status of a

current practice is at issue.  The Court stated that the statute does not bar an employee from using prior acts that may be time-barred as background evidence in support of a timely claim.

Further, because the Court viewed a hostile work environment as a series of separate acts which constitute one unlawful employment practice, it held that as long as one act of the claim occurs within the filing period, the entire period of the hostile work environment may be considered by a court for purposes of determining liability.

While a plaintiff in a sexual harassment case may resort to evidence of the alleged harasser's prior acts, plaintiffs in other types of employment discrimination litigation may use "past acts" evidence in the disparate mistreatment context.  Generally, the courts will find that evidence of discrimination perpetrated against others in the protected class is admissible.  *Shattuck v. Kinetic Concepts, Inc.*, 49 F.3d 1106 (5th Cir. 1995).  Introduction of this evidence may establish widespread discrimination, or may refute Defendants' proffered reason(s) for the adverse action to establish pretext.  Bucks v. Oklahoma Publishing Co., 81 F.3d 975, 981 (10th Cir. 1996), cert. denied, 519 U.S. 931 (1996).  And the courts have not limited the admissibility of such evidence or past acts because it may have occurred prior to the plaintiff's limitations period.  Defendants may argue that the evidence is too remote in time, but that argument goes to the evidence's weight, not to its admissibility, if it is relevant and more probative than prejudicial, as is here.

Since Defendants Andazola and Gomez made their statements and committed other acts of discrimination against Plaintiff from the beginning of the commencement of her Residency, Plaintiff should be able to introduce testimony of all of their misconduct since the commencement of her Residency to show not only that a hostile work environment was tolerated at more than one level in their supervisory hierarchy, but also that the unremedied existence of this misconduct precludes

all Defendants from invoking the *Ellerth/Faragher* affirmative defense to liability (*Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 764-65 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)), and justifies the imposition of punitive damages under *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 545 (1999), and its progeny. Defendants Andazola's and Gomez's alleged misconduct tend to prove that Defendants Memorial and LifePoint Health have not been "making good faith efforts to enforce an anti-discrimination policy," *id*. at 546, thereby precluding Defendants from seeking to use their harassment "policies" as a shield to liability for punitive damages.

Evidence of supervisory and co-worker harassment of Plaintiff committed prior to the reach of the EEOC Charges of Discrimination is admissible as relevant evidence under Rule 401, Fed. R. Evid., and the continuing violation doctrine, since some of the discrimination occurred within the statutory period and is of the same nature as the older events. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). Such evidence is also relevant for countering the Defendants' affirmative defenses to liability under either theory, or their defense to punitive damages. *See, e.g., Ferris v. Delta Air Lines, Inc*., 277 F.3d 128, 135-36 (2d Cir. 2001) (employer liable for co-worker harassment); *EEOC v. Indiana Bell Tel. Co.*, 256 F.3d 516, 525 (7th Cir. 2001) (*en banc*) (*same*); *Nichols v. Azteca Restaurant Enters., Inc*., 256 F.3d 864, 876 (9th Cir. 2001) (*same*).

Alternatively, the plaintiff may establish a *prima facie* case by showing that she is a member of a protected class, she was qualified for the position and persons outside the protected class were treated more favorably than she. *Waggoner v. City of Garland*, 987 F.2d 1160, 1163 (5th Cir. 1993); *Johnson v. Chapel Hill Indep. School Dist*., 853 F.2d 375, 381 (5th Cir. 1988).

6

In this case, Plaintiff is a member of a protected class, she was qualified for the position and those outside of her protected class were treated more fairly - namely those residents of Hispanic origin, as is clear from the three separate accounts of medical doctors who witnessed Thomas' work and Defendants' retaliation at the Hospital. *See* statements of these doctors in Plaintiff's Affidavit, attached hereto and incorporated as **Exhibit A**.

**Allegations of Discrimination Against Other Residents Are Admissible**

Although some allegations of discrimination were directed against and reported by other Residents and were not directed toward Plaintiff herself, their occurrence evidenced a "discriminatory atmosphere" and a pattern of illegal misconduct that are "relevant to showing the corporate state-of-mind." *Cummings v. Standard Register Co.*, 265 F.3d 56, 63 (1st Cir. 2001) (upholding admission of testimony of co-workers who endured comparable discrimination). Also, evidence that others were similarly harassed tends to make "more credible [plaintiff's] testimony about the environment that [s]he was exposed to." *Williams v. ConAgra Poultry Co.*, 378 F.3d 790, 794 (8th Cir. 2004) (upholding admissibility of co-worker's testimony of harassment they experienced, but plaintiff did not). *See also* the Tenth Circuit ruling in *Spulak v. K. Mart Corp.*, 814 F.2d 1150, 1155-56 (10th Cir. 1990). *See also Aman v. Cort Furniture Rental*, 85 F.3d 1074 (3d Cir. 1996); *Glass v. Philadelphia Elec. Co.*, 34 F. 3d 188, 194 (3d Cir. 1994); *Hurley v. The Atlantic City Police Dept.*, 1999 U.S. App. LEXIS 4582 (3d. Cir. March 18, 1999); *Quarantino v. Tiffany & Co.*, 71 F.3d 58 (2d Cir. 1995); *Rifkinson v. CBS Inc.*, 1997 U.S. Dist. LEXIS 15865 (S.D. N.Y. - Oct. 14, 1997).

**Plaintiff Was Not Required to Make Protected Complaints From the Beginning**

As the Supreme Court recognized, the anti-discrimination statutes are violated at the outset, not when the harassment becomes so severe that the plaintiff complains or suffers emotional distress. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993) ("Title VII comes into play before the harassing conduct leads to a nervous breakdown."). Thus, the courts have held that a plaintiff is not required to report each harassing incident immediately, nor is she required to complain directly to the harasser. One court held that the plaintiff need not report harassing remarks when they are first made, and can wait until the harassment "became virtually impossible to ignore." *Corcoran v. Shoney's Colonial, Inc.*, 24 F. Supp. 2d 601, 607-08 (W.D. Va. 1998) (plaintiff did not complain at time of the first remark, and waited seven months, during which the harassment escalated, before complaining); *accord Watts v. Kroger Co.*, 170 F.3d 505, 510 (5th Cir. 1999) ("Watts alleges that her supervisor's harassment intensified in the spring of 1994.  A jury could find that waiting until July of that same year before complaining is not unreasonable."); *Fall v. Indiana Univ. Bd. of Trustees*, 12 F. Supp. 2d 870, 885 (N.D. Ind. 1998) ("the Court cannot say as a matter of law that a sexual assault victim who waits three months to report the incident, under these circumstances, unreasonably failed to take advantage of the University's anti-harassment procedures.").

Here, Dr. Thomas, always fearful of further retaliation by Andazola and Gomez, was only able to complain of their misconduct by "appealing her first wrongful termination from the Residency Program," and by complaining "through her sister and brother-in-law" when they informed CEO Harris of Plaintiff's ongoing mistreatment and finally by filing a Charge of Discrimination with the EEOC.  *See* **Exhibit A**.  Each of these protected complaints were followed by retaliation which is ongoing to the present day.

**Plaintiff Has Sufficiently Alleged Section 1981 Claims**

*Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459-60, 10 F.E.P. Cases 817, 819 (1975) holds that "42 U.S.C. Section 1981 affords a federal remedy against discrimination in private employment on the basis of race."  The Court's holding makes clear that Section 1981 was intended to "proscribe discrimination in the making or enforcement of contracts against or in favor of any race." *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 96 S.Ct. 2574, 12 F.E.P. Cases 1585 (1976).

Likewise, Section 1981 prohibits discrimination based on ancestry or ethnicity.  *St. Francis College v. Al-Khazraji*, 481 U.S. 604 (1987).  Moreover, Section 101 of the Civil Rights Act of 1991 prohibits intentional discrimination in "the making, performance, modification, and termination of contracts." The Act thereby substantially broadens Section 1981 to include discriminatory terminations, harassment, failure to promote and other discrimination in the performance of contracts, including that of gender.  In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court announced the manner in which a discrimination claim may be established.   A *prima facie* case may be shown in a variety of ways, and no one set of criteria is applicable in all situations. *Id.* at 93 S.Ct. 1824, n. 13.

Although *Green* was a hiring case, its four factors for establishing a *prima facie* case have been extended to discharge situations.  *Burdine v. Texas Department of Community Affairs*, 608 F.2d 563 (5th Cir. 1979).

Alternatively, the plaintiff may establish a *prima facie* case by showing that she is a member of a protected class, she was qualified for the position, and persons outside the protected class were

treated more favorably than she. *Waggoner v. City of Garland*, 987 F.2d 1160, 1163 (5th Cir. 1993); *Johnson v. Chapel Hill Indep. School Dist.*, 853 F.2d 375, 381 (5th Cir. 1988).

In this case, Plaintiff is a member of a protected class, she was qualified for the position, and those outside of her protected class were treated more fairly-namely those of Hispanic origin, as is clear from three separate accounts from medical doctors who witnessed Thomas' work and Defendants' retaliation at the Hospital. Again, as former resident Dr. Benjamin Wilson states in his letter in support of Plaintiff,

> **Dr. Thomas was disproportionately and unfairly targeted by John Andazola and Dolores Gomez, that she was quite mercilessly bullied and did operate in a hostile work environment ... and that there is a pervasive inequality in the treatment of residents in the residency program and that factors such as race, ethnicity and age are undoubtedly factors in this inequality** .... *See* **Exhibit A**. Emphasis supplied.

### Plaintiff's Allegations Are Specific Enough to Satisfy *Iqbal* and *Twombly*

Defendant Andazola (hereinafter "Andazola") was, as all times relevant to this case, the director of Defendant Memorial Medical Center's ("Memorial") Southern New Mexico Residency Program (the "Program") and, along with his wife and chief assistant/deputy director of the Program, Defendant Dolores Gomez, and likely with the knowledge and/or tacit consent of Memorial's Board of Trustees and executive officers, openly and illegally discriminated against virtually all of the doctors in the Program who were not Hispanic or Mexican, especially targeting older women of foreign descent, including specifically the Plaintiff herein, Dr. Margaret Thomas.

This Defendant's primary defense to these serious allegations is that Plaintiff's claims are based upon allegations which are not specific enough to meeting the pleading requirements of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

*Twombly* involved claimed violations of the Sherman Act, which prohibits contracts in restraint of trade.  Because the Supreme Court required "a complaint with enough factual matter (taken as true) to suggest that an agreement was made," plaintiffs' complaint in *Twombly* failed for not sufficiently articulating the existence of an "agreement."  *Twombly* did <u>not</u> involve a denial of the fundamental civil rights of American citizens enshrined by the Civil Rights Act of 1964, as amended, and the New Mexico Human Rights Act.

*Iqbal* involved claims of violations of the First and Fifth Amendment made by a <u>Pakistani</u> <u>Muslim</u>, ***not*** by an American citizen.  Therefore, *Iqbal* also did <u>not</u> involve a denial of the fundamental civil rights of American citizens enshrined by the Civil Rights Act of 1964, as amended, and the New Mexico Human Rights Act.

In any event, both *Twombly* and *Iqbal* agree that "Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'  [And that] **'detailed factual allegations' are not required."**  *Iqbal, supra*. Emphasis supplied.

*Iqbal* does require that "... the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Id*., *citing Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

The Federal Rules of Civil Procedure require that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting*

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In contrast, here Plaintiff has proffered direct evidence of Defendants' discriminatory animus.

Should the Court not find that direct evidence of discrimination in Defendants' actions and statements, Plaintiffs may still prevail on her disparate treatment claim under the *McDonnell Douglas* analysis.  *See Rachid v. Jack in the Box, Inc.*, 376 F.3d 305 (5th Cir. 2004).  Plaintiff has the initial burden of proving a *prima facie* case for discrimination, and Defendants must then proffer a legitimate, nondiscriminatory reason for firing Plaintiff.  *See Id.* at 312.  Plaintiff must then show (1) that Defendants' reason is not true, but instead a pretext for discrimination; or (2) that Defendants' reason, although true, is only one of the reasons for their conduct, and that another "motivating factor" is Plaintiff's race, gender, age and/or national origin. *See Id*.

Plaintiff's *prima facie* burden is not meant to be onerous, *see Burdine*, *supra*, 450 U.S. at 253, and she need only proffer "evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion."  *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312 (1996) (emphasis in original; internal quote omitted).

Courts have made clear that Plaintiffs can carry their burden by establishing that: (1) they are members of a protected class; (2) they suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.  *See George v. Leavitt*, 407 F.3d 405, 412 (D.D.C. 2005) (*quoting Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999)).  Defendants argue that Plaintiffs must use comparators to meet their *prima facie* burden.  However, in *George*, the court "made clear" that this rigid approach to discrimination cases is legally flawed.  *George*, 407 F.3d at 412.  Defendants' argument that Plaintiff must show she was treated differently than similarly situated employees "is not a correct statement of the law."

While Plaintiff can raise an inference of discrimination by demonstrating she was treated differently from similarly situated employees from outside their protected class, as is the case with Plaintiff, "this is not the only way." *Id*. (discussing *Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139, 1150-51 (D.C. Cir. 2004)).  For example, discrimination might also be shown by the fact that the employer's legitimate reasons are suspect, which is also the case with Dr. Thomas. *Id*.  Dr. Thomas was fired for reasons that are not substantiated and make no logical sense when compared with her academic accomplishments.

Defendant Andazola spoke disparagingly of Plaintiff, mistaking her to be a Hindu, which explains only part of the reason he discriminated against Plaintiff.  As a perceived Hindu, because of Plaintiff's religion <u>and</u> race/national origin, she was targeted for illegal discrimination.

Other statements made by Defendants Andazola and Gomez were made near in time to Defendants' second decision to terminate Plaintiff.  *See Hanan v. Corso*, 1999 U.S. Dist. LEXIS 23160, 46-48 (D.D.C. 1999) (Facciola, J.) ("the closer in time the statement is to the decision at issue, the more likely the federal courts will find it probative of a discriminatory intent"); *see also Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 575 (7th Cir. 2003) ("age-based derogatory remarks made around the time of and in reference to an employment action are relevant to a finding of discrimination"); *Schreiber v. Worldco, LLC*, 324 F. Supp. 2d 512, 519 (D.N.Y. 2004) **("although evidence of one stray comment by itself is usually not sufficient proof to show  discrimination, that stray comment may bear a more ominous significance when considered within the totality of the evidence"**)(citation omitted).  Emphasis supplied.

In Plaintiff's First Amended Complaint, the **"factual support mustered"** by Plaintiff to support her claims against Defendant Andazola is set forth in the paragraphs attached hereto and

incorporated herein as **Exhibit B**, with the relevant language highlighted (**bolded**, *italicized* and underlined text).

These "mustered facts" are not merely "conclusory" statements but are a clear recitation of "facts" which support Plaintiff's claims of discrimination, assault, infliction of severe and extreme emotional distress and intentional interference with Plaintiff's Residency contract - all perpetrated by Defendants Andazola and, except for the assault,  Gomez.

Because these claims, unlike those of *Iqbal* and *Twombly*, involve the violation of fundamental civil rights of American citizens, such as Dr. Thomas, which are protected by federal and state constitutions and legislative enactments, the pleading requirements of Rule 12(b)(6) necessary to overcome a motion to dismiss have been more than satisfied.

As the Court and Defendants' counsel well know, with regard to claims of illegal discrimination, the alleged perpetrators seldom proclaim their racism or other prejudice by making direct and incriminating statements, such as referring to someone as a "nigger," "spic," "bitch," "dike," "Jew," "Muslim," "beaner," "Aunt Jemima," "brownie," "camel jockey," "chink," "coon," "gook," "jap," "jungle bunny," "kike," "wetback" or a "wop," to list a few of the many pejorative names which overtly signal illegal and discriminatory prejudice prohibited by our nation's laws, but which are seldom used in a professional workplace such as a medical residency program even though the illegal intent is still equally harbored and yet manifests under other guises.

The jury in a case of this nature must be allowed to discern from the conduct Dr. Thomas has alleged and from the totality of the factual circumstances described by Plaintiff whether prejudicial animus on the part of Andazola and Gomez is a motivating factor for the alleged misconduct, and the pleading of these claims must therefore be accorded similar leeway.  If not, professional employees

such as Dr. Thomas would be unfairly precluded from pursuing claims for illegal discrimination perpetrated in silence by other professionals who were nevertheless motivated by the same prejudice that would cause a less-restrained racist to openly voice his or her illegal motivation.

**Plaintiff Exhausted Her "Administrative" Remedies**

Plaintiff's federal and state discrimination complaints cannot be limited by any contract, nor have Defendants presented any contract to the Court which specifically indicates that it preempts, and therefore denies Plaintiff access to, any or all of the remedies available to her pursuant to federal and state anti-discrimination laws.

Plaintiff duly filed Charges of Discrimination with federal and state agencies and obtained the necessary legal authorizations from those agencies to bring suit against Defendants.  No other "remedies" were or are required to be "exhausted."

With respect to Plaintiff's retaliation claim, it can be raised for the first time in federal court. *See Baker v. Billington*, No. 99-2394 (PLF), 2003 U.S. Dist. LEXIS 6993, at *16 n.4 (D.D.C. April 24, 2003) ("it is generally accepted that the exhaustion of administrative remedies doctrine does not apply to claims based on alleged retaliation"); *Hayes v. Shalala*, 902 F. Supp. 259, 266 (D.D.C. 1995); *Webb v. District of Columbia*, 864 F. Supp., 175, 184 (D.D.C. 1994) (requiring plaintiffs to file every new instance of discrimination would serve only to invite further retaliation and erect needless procedural barriers); *Hunt v. D.C. Department of Corrections*, 41 F. Supp. 2d 31, 37 (D.D.C. 1999) 4; *see also, Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992) ("all circuits that have considered the matter agree that plaintiff need not exhaust administrative remedies for a retaliation claim").

Plaintiff received authorizations from the EEOC and the New Mexico Department of Workforce Solutions to bring her discrimination claims against all Defendants.  *See* **Exhibit C**.

## Leave to Amend, If Necessary

In any event, if the Court deems Plaintiff's factual pleading to be deficient in any way or to any extent, Plaintiff hereby requests that leave be given to permit Plaintiff to amend her First Amended Complaint to overcome any of such deficiencies.  ("The court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).)

In support of such further amendment, if necessary, Plaintiff Dr. Margaret Thomas has listed for the Court additional "facts" which the Court may deem to be necessary to support her claims, and such list of "mustered facts" is set forth in her Affidavit which is attached hereto and incorporated herein as **Exhibit A**.

## Leave to Amend and to Consolidate Plaintiff's "Second Lawsuit"

In addition, Plaintiff hereby advises the Court that Plaintiff has filed a "second lawsuit" with this court division, in order to comply with the applicable statute of limitations which runs on May 15, 2018, regarding the Charges of Discrimination Plaintiff has filed with the EEOC and the New Mexico Department of Labor against PHC-Las Cruces, Inc., a wholly-owned subsidiary of Defendant LifePoint Health, Inc., which Plaintiff has recently learned is the owner and operator (on behalf of LifePoint Health, Inc.) of Defendant Memorial Medical Center and the Defendant Southern New Mexico Residency Program, which employed, and apparently still employs, Defendants Andazola and Gomez at all times relevant herein.  *See the second lawsuit,* filed on May 14, 2018 (*Margaret Thomas, M.D. v. PHC-Las Cruces, Inc., et al.,* Case No. 2:18-cv-00451; Doc. 1), and incorporated herein by reference thereto.

16

Said second lawsuit contains all of the facts set forth in Dr. Thomas' Affidavit (**Exhibit A**), and, following this Court's ruling on Defendants' pending motions, Plaintiff will be moving to consolidate said second lawsuit with the instant case.

Counsel for Plaintiff and counsel for Defendants were not able to agree to the form of an amended complaint in time to consolidate these claims through amendment of the complaint in the instant lawsuit before the applicable statute of limitations to file a lawsuit against PHC-Las Cruces, Inc., ran, and therefore a separate lawsuit had to be filed in order to protect Plaintiff's right to bring suit against PHC-Las Cruces, Inc.

Therefore, Plaintiff will be seeking the Court's leave to consolidate both lawsuits, and, upon such consolidation, many of the objections of Defendant Andazola to the First Amended Complaint will have been overcome; and therefore, for this additional reason, Plaintiff respectively requests this Court to permit her leave, again if necessary, to amend her First Amended Complaint and consolidate its claims with the claims made against PHC-Las Cruces, Inc., in the second lawsuit, as all of the claims of both lawsuits relate to and arise out of the identical set of facts stemming from the illegal misconduct of Defendants Andazola and Gomez and LifePoint Health, Inc., and PHC-Las Cruces, Inc., doing business as Memorial Medical Center.


**Plaintiff Did Engage in Protected Activity Supporting Her Claim of Retaliation**

Plaintiff's sister and brother-in-law complained on Plaintiff's behalf to Memorial Medical Center's CEO and Board President, John Harris.  Although their complaint was made without Dr. Thomas' knowledge at the time it was made, Plaintiff's sister and brother-in-law had  Dr. Thomas'

"complete authority to make such a complaint whenever they deemed such to be necessary and appropriate." **Exhibit A**, para. 19.

In addition, Plaintiff filed an EEOC Charge of Discrimination (also a protected complaint) and then, during a mediation of her claims which took place in Santa Fe, New Mexico, on August 11, 2017, made another protected complaint by:

> ... request[ing] Andazola (and thereby the other Defendants) to submit an accurately completed Postgraduate Training Verification form (hereinafter "PTV form") to the New Mexico Medical Board so that an accurate verification of Dr. Thomas' satisfactory completion of at least 24 months (she had actually completed 29 months) in the Residency Program could be presented to the New Mexico Medical Board, and Dr. Thomas' license to practice medicine in the State of New Mexico could then be issued. The PTV form, signed by Andazola, reviewed and/or approved by all liability Defendants and submitted to the New Mexico Medical Board by Andazola, included an attachment signed by Andazola which contained the statement, **"On January 12, 2017, Dr. Thomas was dismissed again from the residency program due to continued academic difficulties."** This statement is patently false, was known to be false by Andazola and which was known and/or should have been known to be false by all of the liability Defendants. (Remember, on the night of December 16, 2016, Andazola told Dr. Thomas, **"I [Andazola] am hearing threats from your [Dr. Thomas'] family - the Samuels. I [Andazola] will terminate you [Dr. Thomas] and face any consequences!"** *See* paragraph 36 [of the First Amended Complaint] above.) Andazola and the other liability Defendants therefore well knew that there were no such "academic difficulties," and that any such "difficulties" later manufactured by the liability Defendants were concocted in conspiracy as a pretext to cover for the real reason Andazola terminated Dr. Thomas from the residency program - invidious racism, misogyny, ageism and religious prejudice. First Amended Complaint, p. 18, para. 49.

In response to each of these "protected complaints," Defendants, including Andazola and Gomez, continued to retaliate against Plaintiff by illegally blocking her access to her New Mexico medical license. And the Defendants' retaliation of denying her medical license continues to this very moment in time, is ongoing and is therefore actionable.

**Defendant's Misconduct and Mistreatment of Plaintiff Was Indeed "Outrageous!"**

The denial by Defendants of Dr. Thomas' request made at the mediation in Santa Fe for the Defendants to correct the record at the NM Medical Board and her subsequent loss of her entire

career because of illegal discrimination and retaliation was "so extreme in degree as to go beyond all possible bounds of decency, and is to be regarded as atrocious, and utterly intolerable in civilized community." *Dominquez v. Stone*, 97 N.M. 211, 638 P.2d 423, 426 (Ct. App. 1981).

In addition, the misconduct committed by Defendants Andazola and Gomez in a professional medical setting (a hospital) with other doctors, nurses, hospital staff <u>and</u> patients present, including Andazola threatening Plaintiff with physical contact and assault, can be nothing other than outrageous - shouting, yelling, bullying, intimidating, assaulting, demeaning, falsifying a Postgraduate Training Verification form and more - certainly all of it is "beyond the bounds of all possible decency" and "utterly intolerable in a civilized community," especially if a jury finds it to be born from racial, misogynist, ageist and/or sexist animus.

**<u>Intentional Interference With Contract</u>**

Defendant is correct that this Defendant should not be held liable for intentional interference with Plaintiff's contract, only for the Hospital's bad faith breach of that contract.

**<u>Defamation</u>**

The Defendants, by and through Andazola, who was acting at all times on behalf of and in conspiracy with the other named Defendants : (1) published a communication (the PVF); (2) which contains a statement of fact; (3) which concerns Plaintiff; (4) which communication was false; (5) which was, by its false nature, defamatory to Plaintiff because it understated and fraudulently misrepresented her professional achievement; (6) the recipient (the NMMB) understood it to be defamatory because Plaintiff had filed a complaint with the NMMB alleging such; (7) Andazola knew that the communication was false and acted with malice; (8) the communication caused actual injury to Plaintiff's reputation, as she was unable to obtain her medical license and perform medical services

in New Mexico as a licensed medical doctor; and (9) Andazola abused a privilege to publish the communication because, as the Director of the Southern New Mexico Residency Program, he was obligated to communicate and publish only truthful statements about residents of the Program such as Dr. Thomas, and by publishing a false PVF to the NMMB, Andazola abused his privilege to act in that capacity and violated his professional duty to Dr. Thomas.

This false and defamatory statement was not only published to the NMMB but also to all Defendants and their Board members and attorneys and to yet-to-be-identified third parties.

Again, if the Court believes Plaintiff's pleading of this cause of action to be deficient in any way, Plaintiff respectfully requests leave of Court to amend.

### *Prima Facie* Tort

This pleading is effectively in the alternative, and if the Court feels that any of the alleged misconduct of the Defendants is intentional and malicious, but otherwise unlawful, and falls outside the rigid traditional tort categories, then the allegations made in this Count must stand.

Again, if the Court believes Plaintiff's pleading of this cause of action to be deficient in any way, Plaintiff respectfully requests leave of Court to amend.

### Civil Conspiracy

Plaintiff's pleading adequately puts Defendants on notice that they all knowingly participated in unison to undermine, undercut, derail, prevent and block Plaintiff's legitimate access to a New Mexico medical license, and all of the facts alleged, taken in the light most favorable to the Plaintiff, describe this conspiracy.

Again, if the Court believes Plaintiff's pleading of this cause of action to be deficient in any way, Plaintiff respectfully requests leave of Court to amend.

### III.     CONCLUSION

Defendant's Motion should be denied, except as otherwise indicated above.  If the Court believes Plaintiff's pleading of this cause of action to be deficient in any way, Plaintiff respectfully requests leave of Court to amend.  Plaintiff will also be seeking consolidation of this case with the *second lawsuit*.

**WHEREFORE**, Plaintiff respectfully requests the Court to deny in all respects Defendant's motion to dismiss and/or, as needed, to permit Plaintiff to amend her First Amended Complaint, and for such other and further relief as may be appropriate or necessary to meet any and all pleading requirements.

Respectfully submitted.

THE BENNETT LAW GROUP, LLC

By: _____
Merit Bennett, Esq.
460 St. Michael's Drive, Ste. 703
Santa Fe, New Mexico 87505
Ph: 505-983-9834 | Fax: 505-983-9836
E-mail: mb@thebennettlawgroup.com
*Attorneys for Plaintiff*

21

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of May, 2018, we filed the foregoing pleading electronically through the CM/ECF system, which notified the following counsel of record as more fully reflected in the Notice of Electronic Filing:

David H. Johnson
djohnson@montand.com
agoodfellow@montand.com

Deborah E. Mann
dmann@montand.com
agoodfellow@montand.com

K. Coe Heard
coe.heard@wallerlaw.com
LEGDocketingClerk-Nash@wallerlaw.com
sabrina.bennett@wallerlaw.com

Margaret Elizabeth McLean
margaretemclean@gmail.com

Mark W. Peters
mark.peters@wallerlaw.com
laura.stokes@wallerlaw.com
LEGDocketingClerk-Nash@wallerlaw.com

Michael W Brennan
mwbrennanlaw@gmail.com
tfrench@cmtisantafe.com

THE BENNETT LAW GROUP LLC

By:   _/s/ Merit Bennett_____
      *Attorney for Plaintiff*

22